J-A17020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SUSAN KATZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES R. KATZ, | : | |
| | : | |
| Appellant. | : | No. 1611 WDA 2017 |

Appeal from the Order Entered, September 28, 2017,
in the Court of Common Pleas of Allegheny County,
Family Court at No(s): FD03-000652-008.

| | | |
|---|---|---|
| SUSAN KATZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES R. KATZ, | : | |
| | : | |
| Appellant. | : | No. 1661 WDA 2017 |

Appeal from the Order Entered, October 11, 2017,
in the Court of Common Pleas of Allegheny County,
Family Court at No(s): FD03-000652-008.

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED AUGUST 20, 2018**

In these consolidated appeals, Appellant, James Katz ("Husband"),
appeals two aspects of the trial court's decision to limit the scope of an
enforcement hearing.  Husband sought to enforce a provision of the parties'
equitable distribution order that obligated Appellee, Susan Katz ("Wife"), to

pay a percentage of a marital debt owed to Attorney Scott Hare ("the Hare Bill"). Specifically, Husband sought to broaden the scope of this debt; thus, he sought to expand Wife's portion. At the same time, Wife sought to enforce another provision that obligated Husband to pay for a percentage of a separate marital debt owed to Attorney Charles Alpern ("the Alpern Bill"). Husband sought to eliminate entirely his portion of this debt. The debts to these attorneys stemmed from legal work unrelated to the parties' divorce action. We affirm the trial court's decision setting the scope of the enforcement hearing.

Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." *Smith v. Smith*, 904 A.2d 15, 19 (Pa. Super. 2006) (citation omitted). We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. *Id.* This Court will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." *Wang v. Feng*, 888 A.2d 882, 887 (Pa. Super. 2005). In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. *Id.*

The history of this case is extremely convoluted and most of it does not need to be restated here. Indeed, the parties have already appealed the

equitable distribution of their marital estate. *See Katz v. Katz* -- A.3d --, 2016 WL 6525507 (Pa. Super. 2016) (unreported non-precedential decision) ("*Katz v. Katz I*"). A concise summation of the relevant facts is as follows:

The parties' equitable distribution of their marital estate was conducted by a Master. Following a hearing, the Master issued a Report and Recommendation, dated May 18, 2011, which assigned various marital assets and marital liabilities to the parties. Of these marital liabilities were two respective sets of attorney fees that the parties jointly incurred in separate legal matters unrelated to their divorce: the Hare Bill and the Alpern Bill. In assigning responsibility for these bills, the Master apportioned to each party not an exact dollar amount – which was yet to be determined – but rather respective percentages. As to the Hare Bill, Husband was liable for 65% of the fee to Wife's 35%. As to the Alpern Bill, Husband was liable for 70% to Wife's 30%.

The parties filed dozens of exceptions and cross-exceptions to the Report and Recommendation. The trial court granted some exceptions, none of which are relevant to this appeal. For our purposes, the trial court adopted the Report and Recommendation as its order on June 25, 2012. Ancillary equitable distribution litigation lingered back and forth between the trial court and the Master for years, finally culminating in 2015 with *Katz v. Katz I*. The equitable distribution scheme is now final.

In December 13, 2016, Husband sought to enforce the provision of the equitable distribution order concerning the Hare Bill. The trial court set a

hearing before the Master. But in doing so, the trial court thought the only disagreement between the parties was the amount of the exact figure; the court did not realize that the parties disagreed with the scope of Attorney Hare's legal work, i.e., what ought to be calculated.

Meanwhile, Wife sought to enforce against Husband the provision assigning him a portion of the Alpern Bill. The trial court consolidated Wife's request for enforcement with the previously scheduled Master's hearing on Husband's request for enforcement of the Hare Bill. In doing so, the trial court realized Husband's interpretation of the Hare Bill provision was much broader than what the trial court determined that the order stated. Thus, the trial court's order sending the disputes to the Master covered both the Alpern Bill and also limited the scope of the Hare Bill calculation. Husband appealed.[1]

Husband sets forth eight statements alleging errors. The four statements regarding the Hare Bill are largely identical to the four statements regarding the Alpern Bill. All of these statements involve a singular contention: namely, Husband claims that the "Report" section of the Master's

---

[1] Before delving into Husband's specific contentions, we note that this matter is appropriately before us. In its Pa.R.A.P. 1925(a) opinion, the trial court noted that while the disposition of the cases might appear interlocutory in nature, the court nevertheless granted Husband's request to certify the relevant trial court orders for appeal pursuant to Pa.R.A.P. 313(b). According to the trial court, Wife strenuously objected at the time, but we note that she did not object at argument. Naturally, just because the parties agree that we should hear the appeal does not necessarily make the appeal appropriate. But in this instance, we agree that the appeals are proper. A decision on these issues will facilitate the resolution of these matters once and for all. *See* Pa.R.A.P. 341 (c) ("Final Orders; Generally").

- 4 -

Report and Recommendation is mere dicta that should be ignored and only the "Recommendation" section should govern the disposition of the two Bills.

## A. The Hare Bill

It was the recommendation of the Master that Wife must pay 35% percent of Attorney Scott Hare's Bill as of November 17, 2010 and "**as it relates to the Enclave.**" The Enclave was a joint real estate venture. But Husband argues that Wife must pay 35% of *everything* Attorney Hare billed and that the only qualifier on the amount was what the bill was on November 17, 2010.

In order to make this argument, Husband dissects and separates the Master's Report from the Master's Recommendation. He articulates that the Master's "Report," which outlined in prose form the reasons for the property distribution, must be read wholly separate and apart from the "Recommendation," which was written more akin to a traditional court order. He reasons that the Report is mere dicta and that it is the Recommendation that governs. On the subject of the Hare Bill, there is indeed a slight variance between the text of the explanatory Report and the text of the Recommendation.

The Master's *Report* stated:

> There is a bill to Attorney Scott Hare **related to the Enclave**. The receiver paid Mr. Hare $5,000.00 on a bill outstanding as of November 17, 2010 and re-engaged him for additional services at a higher hourly rate. The Master recommends that Wife be responsible for 35% and Husband 65% for the remainder owed on that bill. Any bills subsequent to that date are to be paid 100% by Husband or

> the receiver or at the same 35/65 allocation [if] and only [if], Wife is consulted prior to any additional work being performed. If she is not, and if the receiver has not approved them, then Husband is to assume all responsibility for fees owed to Mr. Hare. Once the property is re-titled in the individual names of Husband and Wife, each shall assume legal responsibility for their own properties.

Master's Report and Recommendation, at 13. (Emphasis added). Concerning the Hare bill, the *Recommendation* stated:

> Scott Hare – Husband to pay 65% and Wife 35% of bill outstanding as of 11/17/10 minus amount paid by receiver. Husband to pay 100% of bill incurred since that time. Once the properties in the [E]nclave have been re-titled in accordance with this Recommendation, Husband to pay future bills related to his properties 100% and Wife to pay future bills related to her properties to whomever she chooses to engage.

Master's Report and Recommendation, at 19.

There is hardly any difference between the two paragraphs. Substantively, the latter restated the former. Both referenced the Enclave and the receiver. The only distinction is that the Report explicitly described the Bill as "related to the Enclave" whereas the Recommendation implied the same. The Recommendation referenced the Enclave in a similar fashion but was just not quite as precise as the Report.

Husband concedes that the Report limited the Hare Bill to just the work done pertaining to the Enclave. But he argues that Report must be ignored because it was not the Report, but the Recommendation, which was adopted by the trial court.

**B.     The Alpern Bill**

Meanwhile, the Master also had to dispose of a wholly separate and unrelated attorney bill. The parties were named as defendants in a civil suit brought by Wife's father, Alan Lanfrom, for repayment of monies he loaned to the parties. Husband alludes to the fact that that this loan or loans, an amount in excess of $1.5 million, was a gift by his father-in-law until the parties headed for divorce, then the marital gift suddenly became a marital loan. No matter.

Like the Hare Bill, the precise dollar amount of this Alpern Bill had also yet to be determined. Again, Husband pounces on the textual differences between the Master's Report and the Master's Recommendation.

In the *Report* section, the Master states:

> The [p]arties have been sued by Wife's [f]ather, Alan Lamform[,] for repayment of loans provided via both a signed NOTE (sic) and an understanding in the amount in excess of $1.5 million []. This suit…is working its way through the civil division of this Court. The Master recommends that Husband Pay 70% of the legal fees and Wife 30%. If [the p]laintiff prevails in this suit, each of the [p]arties is to pay 50% of any subsequent award.

Master's Report and Recommendation, at 12.

But in the *Recommendation* section, the Master omitted the explicit Alpern Bill recommendation and stated only:

> Frayer as guardian for Alan Lamform v. Pittsburgh Land Co., James Katz and Susan Katz, Filed 11/10/03. Husband to pay 50% and Wife 50% of any subsequent award.

Master's Report and Recommendation, at 19.

And so Husband argues that he is not bound by the Alpern Bill recommendation because that provision was referenced in the Report section and not in the Recommendation section.  Put another way, Husband contends that the court erred by deeming the recommendation to be a Recommendation. The trial court disagreed and so do we.

\*          \*          \*

Husband's arguments prove meritless several times over.

First, the Report and Recommendation must be read together.  To illustrate this point, we turn to the specific Pennsylvania Rules of Civil Procedure governing this exact context, when the trial court refers the equitable distribution to the master.  Rule 1920.53 provides: "In an action for divorce or annulment which has been referred to a master, the master's **report** shall include findings of fact, conclusions of law and a **recommended** disposition of the case."  Rule 1920.55-2 concerns the exceptions procedure when the equitable distribution was conducted by a master.  Section (a)(1) provides: "After the conclusion of the hearing, the master shall file the record and the **report** within twenty days in uncontested actions or thirty days from the last to occur of the receipt of the transcript by the master or close the record in contested actions."  In addition to the procedure outline in Section (a)(1), Section (a)(2) provides that the master must also "immediately serve upon counsel for each party…a copy of the **report and recommendation**, and written notice of the right to file exceptions."   What then?

Section (b) instructs: "Within twenty days of the date of the receipt or the date of mailing of the master's **report and recommendation**, whichever occurs first, any party may file exceptions to the **report** or any part thereof, to rulings on objections to evidence, to statements or findings of fact, to conclusions of law, or to any other matters occurring during the hearing." Section (d) then states: "If no exceptions are filed, the court shall review the **report** and, if approved, shall enter a final decree." The exact same back-and-forth language is articulated in Rule 1920.55-3, which outlines the procedure when a party seeks a de novo hearing instead of pursuing exceptions.

Clearly the report and the recommendation are one. The report encompasses the recommendation. The recommendation is a necessary feature of the report. It cannot be that the Rules of Procedure would require, say, the master to file the *just* the report, but serve upon the parties *both* the report and the recommendation. Husband's construction of Pennsylvania procedure is byzantine.

Compare Rule 1920.55-2(d) (relating to the exceptions procedure) to Rule 1920.55-3(d) (relating to the de novo trial procedure).

- Rule 1920.55-2(d): "If no exceptions are filed, the court shall review the **report** and, if approved, shall enter a final decree."

- Rule 1920.55-3(d): "If no demand for a de novo hearing is filed…, the court shall review the **report and recommendation** and, if approved, shall enter a final decree."

How could it be the case that the trial judge must review and approve the report *and* recommendation in one instance, but *only* the report in another? The obvious answer is that it is not the case. These provisions are nearly carbon copies except that the former cites just the **report** and the latter cites both the **report and recommendation**. Surely the rule makers did not anticipate a difference. Frankly, the above exercise is wholly academic, but helpful insofar as to highlight the frailty of Husband's arguments.

The parties discuss whether their original exceptions mentioned the Hare Bill or the Alpern Bill. The dueling logic goes: if Wife took exception of the Hare Bill and that exception was dismissed, then Husband's interpretation of the Hare Bill's division reigns. Similarly: if Husband raised factual and legal exceptions regarding the "Report" (as opposed to the "Recommendation") and since those exceptions were also dismissed, then there cannot be a discrepancy between the Report language and the Recommendation language. These arguments are superfluous.

The question of whether the Report is severable from the Recommendation is irrelevant. Apart from some other issues, which are irrelevant for our purposes, the trial court adopted *both* the Report and Recommendation. *See* Order of Court, dated June 25, 2012 ("The remainder of the Master's Report and Recommendation, as modified herein, is adopted by this Court as a final Order.") The equitable distribution scheme, including the liabilities outlined in the Hare and Alpern Bill provisions, has long been

finalized. The question is not whether either side appropriately preserved an exception for review on appeal. The review is over. The adoption of the Report and the Recommendation is final, regardless of whether they are read together.

To this end, one of two scenarios transpired; either ends our inquiry. 1) Husband originally raised the Hare-Alpern issues on exceptions, lost on exceptions, and then failed to raise these issues on appeal during the *Katz v. Katz I* litigation. In this first scenario, Husband is no longer entitled to relief. 2) Or, in the alternative, Husband did not raise the Hare-Alpern issues on exceptions, and these issues have been waived, per Rule 1920.55-2(b). In this alternative scenario, Husband is no longer entitled to relief.

The ultimate question is whether the trial court's interpretation of its own order is an abuse of discretion. In this instance, no abuse of discretion occurred.

Here, the existence of an ambiguity between the Report and the Recommendation does not serve Husband's cause. If any ambiguity exists, it exists only in the trial court's finalized order adopting the Master's Report and Recommendation. It is for the trial court to interpret its own order. As to the Hare Bill, the trial court interpreted the provision to mean only the portion of the Bill that related to the Enclave. This is a fair interpretation considering that both texts cite to the Enclave. Regarding the Alpern Bill, the court decided to follow the Master's recommendation even though this recommendation was not in the "Recommendation" section. This is also a fair interpretation. Why

else would the Master bother proposing this distribution of a marital liability if the Master did not actually intend for such a distribution to occur? Neither of these trial court decisions, which established the scope of the enforcement hearing, constitute an abuse of discretion. Thus, we conclude that the Master Hearing regarding these bills shall proceed as determined by the trial court.

For the aforementioned reasons, we affirm.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2018